UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOHN MCGOVERN                          :
                                       :
         v.                            :        C.A. No. 05-162T
                                       :
JO ANNE B. BARNHART,                   :
Commissioner, Social Security          :
Administration                         :

## REPORT AND RECOMMENDATION

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on April 18, 2005 seeking to reverse the decision of the Commissioner. Plaintiff filed a Motion to Reverse the Commissioner's decision or for Remand for further proceedings under sentence four of 42 U.S.C. § 405(g). The Commissioner filed a Motion for an Order Affirming her Decision.

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B). Based upon my review of the record, my independent legal research, and my review of the legal memoranda filed by the parties, I recommend that the Commissioner's Motion for an Order Affirming her Decision (Document No. 6) be DENIED and that Plaintiff's Motion for Remand (Document No. 5) be GRANTED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and DIB on January 3, 2002, alleging disability since November 1, 2000. (Tr. 151-155).[1] The application was denied initially (Tr. 102, 109-112) and on reconsideration. (Tr. 103). Plaintiff requested a hearing (Tr. 120), and on December 1, 2003, Administrative Law Judge ("ALJ") Hugh S. Atkins held a hearing at which Plaintiff, represented by counsel, Stephan Kaplan, M.D., a medical expert ("ME") and Ronald Briere, a vocational expert ("VE") appeared and testified. (Tr. 37-75). A subsequent hearing was held on February 6, 2004, at which the VE appeared and provided further testimony. (Tr. 76-100). The ALJ issued a decision on April 30, 2004, finding that Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform a significant range of light work which exists in significant numbers in the national economy. (Tr. 16-29). The Appeals Council denied Plaintiff's request for review on February 17, 2005 (Tr. 7-9), rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the Commissioner's decision should be reversed because there are multiple harmful defects in the ALJ's decision, and because the decision is not supported by substantial evidence. In large part, Plaintiff attacks the substance of evidence presented by the VE and the procedure utilized by the ALJ in obtaining such evidence. The Commissioner disputes

---

[1] Plaintiff previously filed an application for a period of disability and DIB on July 11, 2000, alleging disability as of September 15, 1998. (Tr. 148-150). This application was denied initially (Tr. 101, 104-107), and Plaintiff did not appeal.

Plaintiff's claims of legal error and argues that there is substantial evidence in the record to support her decision that Plaintiff is not entitled to disability benefits.

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence

establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a

reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

-6-

**B.     Developing the Record**

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d

990, 997 (1ˢᵗ Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right

to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of

that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human

Servs., 826 F.2d 136, 142 (1ˢᵗ Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by

counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained

counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty,

947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1ˢᵗ Cir.

1980).

**C.     Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's

medical sources do not give sufficient medical evidence about an impairment to determine whether

the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8ᵗʰ Cir.

1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a

consultative examination unless the record establishes that such an examination is necessary to

enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs.,

758 F.2d 14, 17 (1ˢᵗ Cir. 1985).

**D.     The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§

404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3); 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.   Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)   Treatment, other than medication, for relief of pain;
>
> (5)   Functional restrictions; and
>
> (6)   The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.    APPLICATION AND ANALYSIS

Plaintiff was forty years old at the time the ALJ issued his decision.  (Tr. 271).  Plaintiff has a high school education (Tr. 187) and previously worked as a finish carpenter.  (Tr. 42-46, 182).  Plaintiff stopped working in March 2000 (Tr. 181) and alleged disability due to pain in his back and shoulder, swollen joints and septic arthritis at the time of his January 2002 filing.  (Tr. 181).  In his July 2002 reconsideration request, Plaintiff additionally alleged "neck damage" and noted he was

-11-

"depressed." (Tr. 200). At the ALJ hearing, Plaintiff's attorney indicated that the basis of disability was "primarily...the exertional limitations from the thoracic radiculitis." (Tr. 41).

Plaintiff testified that he injured his left shoulder and lower back in April 1997 while lifting a large screen monitor at work. (Tr. 47). Plaintiff testified that he went to the hospital but did not have any operations. (Tr. 48). Plaintiff noted that, since the accident, he has had left arm and back pain and has had trouble sleeping at night. (Tr. 48). Plaintiff testified that he was able to move his left arm, including reaching up, but this caused pain in his neck and face. (Tr. 48). Plaintiff noted that he can use his left arm but could not use it to lift any type of weight without feeling pain. (Tr. 50). Plaintiff also testified that he had arthritis in his joints, but he admitted that he was able to work as a finish carpenter, despite problems with the condition. (Tr. 50-51).

On May 7, 1997, Plaintiff went to the hospital and reported back, neck and shoulder pain due to his work injury which occurred two weeks prior. (Tr. 253). An MRI done on Plaintiff's left shoulder revealed no significant bone or joint abnormalities, and no evidence of a rotator cuff tear or significant tendinopathy. (Tr. 294). On June 24, 1997, Plaintiff visited Dr. Jaime Chamorro, complaining of pain in his back and left shoulder. (Tr. 258-259). After reviewing film of Plaintiff's left scapula, Dr. Chamorro assessed a possible fracture left scapula and a tear in the left rhomboid minor muscle. (Tr. 258). Dr. Chamorro recommended that Plaintiff not do any degree of lifting with his left upper extremity and told Plaintiff to take Ibuprofen and Extra Strength Tylenol. (Tr. 258). In August and October 1997, MRI testing of Plaintiff's left posterior thorax and cervical spine were generally unremarkable. (Tr. 295-296). At Dr. Chamorro's request, Dr. William J. Golini performed a neurological evaluation of Plaintiff in December 1997. Dr. Golini reported that Plaintiff's

-12-

electromyographic study demonstrated a mild to moderate bilateral C7 radiculopathy. (Tr. 297-299). Dr. Golini released Plaintiff to work with lifting restrictions. (Tr. 298).

In January 1998, Dr. Henry E. Laurelli, examined Plaintiff and assessed musculoskeletal injury, left shoulder girdle. (Tr. 256-257). In April 1998, Plaintiff began treatment with Dr. Charles Radbill. (Tr. 321). Dr. Radbill assessed chronic costotransverse joint strain and sprain (Tr. 273) and treated Plaintiff through 2003 with manipulation therapy, injection treatment, Oxycontin and Lortab. (Tr. 272-275, 321-350, 352-367).

In September 2000, Dr. Chamorro reported Plaintiff's continued complaints of pain in the shoulder region, interscapular area, and sometimes in the left arm and forearm. (Tr. 276). Upon examination, Plaintiff's left shoulder had no muscle atrophy nor spasm. (Tr. 277). Plaintiff exhibited pain at the extremes of forward bending and internal rotation or maximum abduction. (Tr. 277). Dr. Chamorro reported that Plaintiff had no deformity in the cervical spine, no restricted mobility, and no neurological abnormalities. (Tr. 278). X-rays of the cervical spine, thoracic spine, and the left shoulder were all normal. (Tr. 277). Dr. Chamorro concluded that Plaintiff should not perform activities requiring constant reaching or lifting above shoulder level or carrying objects with his right upper extremity[2] above thirty pounds.

At the request of the Social Security Administration, on March 7, 2002, Dr. J. Scott Toder, a rheumatologist, examined Plaintiff. (Tr. 301-302). Plaintiff complained of muscular discomfort in his shoulder area with loss of feeling in his hands, spasms of his low back, and pain in his left hip bursa area. (Tr. 301). Plaintiff stated that he had a history (1979) of staph infection affecting his

---

[2] As shown by the examination report (Tr. 276-278) Dr. Chamorro likely meant to restrict Plaintiff's activities with his left upper extremity. (Tr. 56-57). As stated above, Dr. Chamorro reported that Plaintiff's range of motion in his right upper extremity was normal. (Tr. 277).

-13-

right elbow, both knees, both ankles, toes and shoulders. (Tr. 301). Upon examination, Plaintiff had normal gait, intact strength, normal reflexes, negative straight leg raising, normal sensation and negative Tinel's and Phalen's signs. (Tr. 301). The lumbar spine flexion was at twenty degrees, however, Dr. Toder noted that Plaintiff would not bend further because of complaints of pain in his left buttock. (Tr. 301). Films of Plaintiff's lumbar spine were normal. (Tr. 301). Dr. Toder noted only slight discomfort with internal and external rotation of the left shoulder with slightly decreased range of motion and crepitus. (Tr. 301). Dr. Toder noted that Plaintiff's right knee showed full range of flexion with lack of only five degrees on extension. (Tr. 301). Plaintiff had full range of motion in his ankles with no swelling, warmth, or erythema. (Tr. 301). Dr. Toder concluded that Plaintiff had some restriction of the right knee on extension, mechanical foot dysfunction and slight decreased range of motion with discomfort of his left shoulder, and a significant lumbar spine motion limitation. (Tr. 302).

On September 11, 2003, Dr. Radbill completed a medical questionnaire for Plaintiff's counsel and reported that Plaintiff had a diagnosis of chronic thoracic radiculitis. (Tr. 347). He stated that over the course of treatment, Plaintiff had severe symptoms including pain, muscle spasms, weakness, insomnia and depression. (Tr. 347-348). Dr. Radbill opined that Plaintiff could not sustain competitive employment on a full-time, ongoing basis. (Tr. 348). He further noted, in a physical capacity evaluation, that Plaintiff could sit and stand for only one hour in an eight-hour workday, could walk for three hours in an eight-hour workday, could never lift or carry anything over five pounds and could never reach, push, pull, do over the shoulder work, kneel or crawl. (Tr. 350). Further, according to Dr. Radbill, Plaintiff could occasionally lift and carry up to five pounds and could occasionally bend and squat. (Tr. at 350).

At the request of his attorney, Plaintiff was examined on November 25, 2003 by Dr. K. Nicholas Tsiongas, Certified Independent Medical Examiner, to assess Plaintiff's functional limitations. (Tr. at 368-373). Plaintiff's chief complaint was pain primarily situated in the left shoulder, left temporal scalp, left neck, left midback and the left arm. (Tr. 368). Plaintiff stated that he was being treated with Oxycontin, Oxyfast, Xanax and Valium. (Tr. 368). Upon examination, Plaintiff could toe-walk and heel-walk without difficulty, had full range of motion at the waist with a complete lack of extension, and had full range of motion of the neck, wrists and elbows bilaterally. (Tr. 369-370). Plaintiff was somewhat tipped to the right, was tender to palpation on his left shoulder, had rotary scoliosis, was achy to the left periscapular area, left iliosacral joint, and left sciatic notch, had some compensatory right parathoracic paralumbar muscle prominence, and some pain radiating to each hip joint with Patrick's maneuver. (Tr. 369-370). However, he had normal reflexes and normal straight leg raising. (Tr. 370). Dr. Tsiongas diagnosed bilateral hip pain, chronic pain syndrome of the left upper extremity, left neck, left periscapular area with a "paucity of objective findings," and untreated depression. (Tr. 370).

Dr. Tsiongas completed a physical capacity evaluation and stated that Plaintiff could lift and carry up to twenty pounds occasionally, stand and walk for up to one hour in an eight-hour workday, sit for four hours in an eight-hour workday, and never use his arms and hands (right and left) for reaching, pushing and pulling, or over shoulder work. (Tr. 351). Dr. Tsiongas also stated that, based upon Plaintiff's diagnosis, examination and the "remarkable amount" of narcotic pain medication prescribed by Dr. Radbill, he opined that Plaintiff suffered from moderately severe pain. (Tr. 374). He opined that Plaintiff would likely suffer a moderately severe reduction in attention, concentration,

persistence, pace, and productivity, and he should avoid work requiring significant forward bending or bilateral manual dexterity. (Tr. 374).

Nonexamining state agency physicians also assessed Plaintiff's physical RFC in June and August 2002. (Tr. 303-311, 312-320). The physicians opined that Plaintiff could perform the general physical demands of light work (lifting and/or carrying twenty pounds occasionally and ten pounds frequently and sitting, standing, and/or walking for about six hours in an eight-hour workday) with a limitation on reaching with the upper left extremity. (Tr. 304-306, 313-315).

Also at the request of his attorney, Plaintiff was examined on March 13, 2004 by John Parsons, Ph.D., to assess his social and emotional functioning. (Tr. 376-385). Dr. Parsons performed a clinical interview, review of the records, Beck Anxiety Inventory, Beck Depression Inventory, pain patient profile and mental status examination. (Tr. 377). Dr. Parsons stated that Plaintiff never had psychological hospitalization or outpatient psychotherapy. (Tr. 379). Dr. Parsons diagnosed Major Depressive Disorder, Single Episode, Severe with Psychotic Symptoms; Generalized Anxiety Disorder; Chronic Pain Disorder; and Nicotine Dependence. (Tr. 382). Dr. Parsons reported that due to Plaintiff's depression, maintaining gainful employment would be difficult. (Tr. 383). Dr. Parsons completed a Supplemental Questionnaire as to RFC and concluded that Plaintiff had moderate to moderately severe limitations in all but one area of mental functioning. (Tr. 384-385).

At the December 1, 2003 hearing, Dr. Kaplan testified as an ME. (Tr. 51-69). Dr. Kaplan testified that, based upon his examination of the medical record, the history of multiple joint infection alleged by Plaintiff was questionable. (Tr. 51). He stated that Plaintiff had a severe injury occur in May 1997 which resulted in a fracture of the scapula. (Tr. 52). Dr. Kaplan then

-16-

summarized the medical evidence and stated that there was some conflict between the opinion of Dr. Radbill and the opinions of Dr. Chamorro and Dr. Toder. (Tr. 54-55). Dr. Kaplan opined that in this case, Plaintiff had an injury to the scapula and it was possible but unlikely that he developed chronic pain as a residual of that injury. (Tr. 66). Dr. Kaplan further stated that there was not a lot of evidence of anything that would be of a disabling nature, including Dr. Radbill's diagnosis of thoracic radiculitis. (Tr. 66-67). Dr. Kaplan noted that without a nerve study, such a diagnosis was not well documented. (Tr. 67). Dr. Kaplan also testified that Plaintiff's complaints of pain were not entirely consistent with the record. (Tr. 68).

## A.   The ALJ Should Have Granted Plaintiff's Request for a Second Supplemental Hearing

The ALJ concluded that Plaintiff retained the RFC for light work "but is limited in his ability to perform tasks that require more than a minimal use of manual dexterity." (Tr. 25; Tr. 29, Finding 6). Since Plaintiff is unable to perform "the full range of light work," the ALJ used an impartial VE to help him determine at Step 5 "whether or not there are a significant number of jobs in the national economy that [Plaintiff] can perform given his [RFC] and other vocational factors." (Tr. 27). The ALJ ultimately found for the Commissioner at Step 5 and found that Plaintiff could perform a significant number of jobs in the national economy such as inspector, cashier, clerk, packer, and usher/security guard. (Tr. 29, Finding 12).

Plaintiff contends that this Step 5 finding is not supported by substantial evidence and that the process used in obtaining evidence from the VE was marked by multiple errors. This Court agrees and concludes that Plaintiff was denied a full and fair opportunity to understand and probe

the evidentiary basis for the VE's opinion. A detailed review of the VE's testimony and submissions is necessary in order to appreciate that remand is warranted.

At the first ALJ hearing (December 1, 2003), the ALJ posed a hypothetical to the VE "assuming work...requiring minimal use of bimanual dexterity." (Tr. 72). The ALJ did not offer any other specifics to the VE about the meaning of the "minimal use" restriction. Id. In response, the VE identified several unskilled positions at the light and sedentary exertional level that the hypothetical individual could perform. (Tr. 72-73). Unfortunately, the VE offered no details as to how he took the "minimal use" limitation into consideration. See Carey v. Apfel, 230 F.3d 131, 140 (5th Cir. 2000) (The ALJ "prudently" asked the VE to "directly address" the claimant's limitation to working with only one arm.). In addition, the VE did not provide the codes for these positions from the Dictionary of Occupational Titles ("DOT") and did not identify the numbers of such positions existing in this area. (Tr. 73).

Shortly after the first ALJ hearing, the VE submitted a letter dated December 9, 2003 to the ALJ providing DOT code numbers and other general information for the positions he identified at the hearing. (Tr. 209). That evidence was, as required, proffered to Plaintiff's counsel for review. (Tr. 210-211). Relying upon Social Security Ruling ("SSR") 00-4p and Section I-2-5-58 of the Commissioner's Hearings, Appeals and Litigation Manual ("HALLEX"),[3] Plaintiff's counsel requested a supplemental hearing to cross-examine the VE regarding the positions identified and to explore discrepancies between Plaintiff's RFC and the positions identified. (Tr. 212). The request

---

[3] HALLEX is a manual of internal procedures and it is not binding upon the Commissioner because it has no force of law such as a statute or regulation. See Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). Thus, claims of HALLEX violations are generally not reviewable, particularly in the absence of prejudice to the claimant. Id.; see also Shave v. Apfel, 238 F.3d 592, 597 (5th Cir. 2001).

-18-

was granted, and a supplemental hearing was held on February 6, 2004. Prior to the second ALJ hearing, the VE determined that his first post-hearing submission (Tr. 209) contained some DOT code errors, and the VE submitted a "corrected" letter dated January 30, 2004. (Tr. 213).

The second ALJ hearing took place on February 6, 2004. (Tr. 76-100). The VE testified at the second hearing and was questioned by the ALJ and by Plaintiff's counsel. (Tr. 76). Plaintiff's counsel identified several other errors contained in the VE's "corrected" letter. (Tr. 213-214). See SSR 00-4p (The ALJ "must elicit a reasonable explanation" from the VE for any conflicts between his evidence and the DOT.). Plaintiff's counsel also questioned the VE, consistent with the hypothetical, about the ability to do the positions identified with "minimal use" of one hand. (Tr. 86-87). Finally, Plaintiff's counsel questioned why the VE had identified positions requiring medium exertion when Plaintiff was limited to light and sedentary work. (Tr. 93). Ultimately, the ALJ expressed a need for more information from the VE and indicated that the parties "were starting to go around in a circle...." (Tr. 97). The ALJ concluded that the case was headed for a "threepeat." (Tr. 99). He also stated that he thought "we're going to have to come back and look at more of these subsets" of identified positions for an "encore performance." (Tr. 95). These comments plainly suggest to this Court that the ALJ felt at that time that a third hearing was necessary.[4]

A third hearing was never held despite Plaintiff's request for one. (Tr. 147). Following the second hearing, the VE submitted a letter to the ALJ containing "a more specific list of occupations and their DOT code numbers that fall within the purview of your hypothetical." (Tr. 247). In the post-hearing submission, the VE also indicated that he utilized his "experience and knowledge to

---

[4] It appears to this Court that the need for multiple hearings was not the fault of the ALJ or Plaintiff's counsel but rather was primarily caused by the VE's lack of preparedness and inattention to detail.

supplement information provided by the DOT" and then offered his "opinion" that the more

extensive list of occupations met the requirements of the ALJ's hypothetical. (Tr. 247-48). The VE

again failed, however, to explain in any detail how he took the "minimal use" of one hand restriction

into account in reaching his conclusion. Id. In addition to offering his conclusory expert opinion,

the VE (a non-lawyer) offered a legal opinion in his February 16, 2004 submission and cited three

federal Court of Appeals decisions as support. The VE argued in his letter that the ALJ was free to

"prefer" his testimony over the conclusions in the DOT. (Tr. 247). The VE's role is to provide

vocational evidence and not legal argument to the ALJ. The VE's citation to legal authority suggests

a partisan rather than impartial role in this matter. Rather than citing legal authority, the VE should

have focused more on detailing the evidentiary basis for his opinion. Finally, on March 18, 2004,

the VE submitted another letter to the ALJ providing the approximate number of such positions

available to Plaintiff in the Rhode Island/Southeastern Massachusetts area. (Tr. 252). The VE did

not, however, identify the basis for this information.

On March 5, 2004, Plaintiff's counsel requested a second supplementary hearing, and this

Court concludes that the failure to grant one requires remand. It is apparent from the record that the

VE based his opinion in large part on his "experience and knowledge" in addition to objective

evidence from sources such as the DOT. While there is nothing improper about the VE relying on

his professional experience and expertise in rendering his opinion, Plaintiff's counsel is entitled to

a full and fair opportunity to examine and probe the basis for the VE's opinion. See Haddock v.

Apfel, 183 F.3d 1225, 1230 (10th Cir. 1999) ("Claimants have a right to cross-examine vocational

experts as a part of procedural due process."). Plaintiff's counsel did not get that opportunity in this

case.

Through no apparent fault on the ALJ's part, the VE's opinion at the first hearing was largely conclusory. Thus, the ALJ properly sought and received additional information from the VE and ultimately relied upon that additional information in finding against Plaintiff. Although the VE's ultimate opinion remained the same, his support for the opinion developed over time. After the evolution of the VE's opinion reached its conclusion, Plaintiff never had an opportunity to examine and probe that opinion. The ALJ should have granted Plaintiff's request (Tr. 147) for a second supplemental hearing to allow for such an examination.

The Commissioner argues that any error in denying a further hearing was harmless because the ALJ's finding is supported by substantial evidence. This Court generally agrees with the principle of "harmless error" to avoid the time and expense of needless remands. See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000). However, the principle does not apply in this case. Because the error relates to Plaintiff's inability to fully and fairly examine evidence, the record is somewhat "one-sided" on this particular issue. It is difficult, if not impossible, to assess the extent of harm, if any, to Plaintiff's case because the VE's evidence was not subject to full and fair cross-examination by Plaintiff's counsel. If it had been, this Court would be in a better position to examine the record and possibly conclude that any procedural error was harmless.

## B.    Other Claimed Errors

Plaintiff further argues that the ALJ failed to follow the prescribed method for evaluating his mental impairment, i.e., depression. See 20 C.F.R. § 404.1520a. He also contends that the ALJ erred in discounting the opinions of his treating physician, Dr. Radbill, and his consulting physician, Dr. Tsiongas. This Court has thoroughly reviewed the ALJ's decision and the record and finds no basis for these arguments. The ALJ's RFC assessment that Plaintiff is able to perform a limited

-21-

range of light work is supported by substantial evidence. The ALJ exercised his discretion to weigh the medical evidence and appropriately articulated the weight given and reasons therefore.

As to Plaintiff's claimed mental impairments, the ALJ's conclusion that any such impairment was not "functionally limiting" in any way is supported by the record. In fact, Plaintiff's counsel candidly indicated at the first ALJ hearing that the case for disability was "primarily" based on exertional limitations related to the shoulder injury. (Tr. 41). Plaintiff did not mention depression on his initial application for benefits and, as noted by the ALJ, has "no history of psychiatric treatment." (Tr. 22). Overall, the ALJ's credibility findings are adequately supported by the record and entitled to due deference. <u>Da Rosa v. Sec'y of Health and Human Servs.</u>, 803 F.2d 24, 26 (1st Cir. 1986).

## VI.   CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming her Decision (Document No. 6) be DENIED and that the Plaintiff's Motion for Remand (Document No. 5) be GRANTED. I further recommend that the District Court enter Final Judgment in favor of Plaintiff reversing the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and remanding for additional proceedings consistent with this opinion.

LINCOLN D. ALMOND
United States Magistrate Judge
January 13, 2006